# In the United States Court of Federal Claims

No. 20-774C

(E-Filed: November 30, 2020)[1]

|  |  |
|---|---|
| NAVARRO RESEARCH AND ENGINEERING, INC., | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| THE UNITED STATES, | ) ) ) |
| Defendant, | ) ) ) |
| and | ) ) |
| RSI ENTECH, LLC, | ) ) ) |
| Intervenor-defendant. | ) ) ) |

Post-Award Bid Protest; Motions for Judgment on the Administrative Record; RCFC 52.1(c); Plain Language Review; Agency Discretion.

Richard P. Rector, Washington, DC, for plaintiff. Samuel B. Knowles, Thomas E. Daley, Ryan P. Carpenter, of counsel.

Joshua E. Kurland, Trial Attorney, with whom appeared Michael D. Granston, Deputy Assistant Attorney General, Robert E. Kirschman, Jr., Director, and Douglas K. Mickle, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant. Monekia G. Franklin, United States Department of Energy, of counsel.

Damien C. Specht, McLean, VA, for intervenor-defendant. James A. Tucker, Caitlin A. Crujido, Lyle F. Hedgecock, of counsel.

## OPINION

---

[1]  This order was issued under seal on November 3, 2020. See ECF No. 45. The parties were invited to identify source selection, proprietary or confidential material subject to deletion on the basis that the material is protected/privileged. No redactions were proposed by the parties. See ECF No. 47 (notice). Thus, the sealed and public versions of this order are identical, except for the publication date and this footnote.

CAMPBELL-SMITH, Judge.

Plaintiff filed this bid protest to challenge the award of a contract for the provision of "Legacy Management Support Services" to "'sites in the United States and the territory of Puerto Rico associated with past radiological and nuclear material production and testing, and energy research.'"  ECF No. 1 at 1, 8 (complaint).  Plaintiff filed a motion for judgment on the administrative record (AR) on August 3, 2020, ECF No. 32; and both defendant and intervenor-defendant filed cross-motions for judgment on the AR and responses to plaintiff's motion on September 2, 2020, ECF No. 37 and ECF No. 38.  Plaintiff filed its response to the cross-motions and reply in support of its motion on September 18, 2020, ECF No. 39, and defendant and intervenor-defendant filed their replies on October 5, 2020, ECF No. 40 and ECF No. 41.  The motions are now fully briefed and ripe for ruling.

In ruling on these motions, the court has considered the following:  (1) plaintiff's complaint, ECF No. 1; (2) the AR, ECF No. 27; (3) plaintiff's motion for judgment on the AR, ECF No. 32; (4) plaintiff's memorandum in support of its motion for judgment on the AR, ECF No. 33;[2] (5) defendant's supplement to the AR, ECF No. 36; (6) intervenor-defendant's response to plaintiff's motion for judgment on the AR, and its cross-motion for judgment on the AR, ECF No. 37; (7) defendant's response to plaintiff's motion for judgment on the AR, and its cross-motion for judgment on the AR, ECF No. 38; (8) plaintiff's reply in support of its motion for judgment on the AR, and its response to defendant's and intervenor-defendant's cross-motions for judgment on the AR, ECF No. 39; (9) defendant's reply in support of its cross-motion for judgment on the AR, ECF No. 40; (10) intervenor-defendant's reply in support of its cross-motion for judgment on the AR, ECF No. 41.

---

[2]   Plaintiff attached three exhibits to its memorandum in support of its motion for judgment on the AR.  See ECF No. 33-1; ECF No. 33-2; ECF No. 33-3.  The first and second appear to be charts of labor rates and the third is a declaration from Ms. Susana Navarro-Valenti.  See id.  Defendant requested in its cross-motion that the court "strike or disregard the exhibits because they are outside the administrative record and supplementation is not necessary to allow 'meaningful judicial review' in this case."  ECF No. 38 at 45.  Plaintiff points out that the charts are already in the AR at ECF No. 27-15 at 613-18.  See ECF No. 39 at 22.  The declaration, however, is not.  The court finds that supplementation is not necessary for meaningful judicial review in this matter and, therefore, the declaration is not appropriately considered in analyzing the motions before the court.  See Axiom Res. Mgmt. v. United States, 564 F.3d 1374, 1379-80 (Fed. Cir. 2009) (holding that "supplementation of the record should be limited to cases in which the omission of extra-record evidence precludes judicial review") (quotation marks and citation omitted).  The court thus has not taken the declaration into consideration in its review of this matter.  The charts, however, are part of the AR in this matter and are considered in that context.

On October 29, 2020, plaintiff filed a motion for leave to file notice of supplemental authority "addressing a recent decision of the United States Government Accountability Office that is directly relevant" to this case.  ECF No. 44.

For the reasons set forth below:  (1) plaintiff's motion for leave to file notice of supplemental authority, ECF No. 44, is **DENIED**; (2) plaintiff's motion for judgment on the AR, ECF No. 32, is **DENIED**; (3) defendant's cross-motion for judgment on the AR, ECF No. 38, is **GRANTED**; and (4) intervenor-defendant's cross-motion for judgment on the AR, ECF No. 37, is **GRANTED**.

I.      Background

      A.      The Solicitation

On July 1, 2019, the United States Department of Energy (DOE) issued a solicitation for a single award, indefinite-delivery, indefinite-quantity (IDIQ) contract for "Legacy Management Support Services (LMS)" conducting "post-closure site operations" "for protection of human health and the environment" at sites "associated with the legacy of the Cold War."  ECF No. 27-3 at 1 (solicitation); ECF No. 27-7 at 114 (amended solicitation); ECF No. 27-6 at 120 (amended solicitation statement of work). The DOE anticipated awarding a five-year contract under which task orders would issue that could last for up to three years beyond the ordering period, with a minimum anticipated contract amount of $500,000, and a maximum of $1 billion.  See ECF No. 27-7 at 114.

The solicitation specified both proposal preparation instructions and evaluation factors.  See id. at 211-13; 218-23.  The proposal preparation instructions were contained in Section L, titled Instructions, Conditions, and Notices to Offerors, and noted that "[p]roposals are expected to conform to all solicitation requirements and the instructions in this Section L."  Id. at 197, 205.  It further clarified that "[t]hese instructions are not evaluation factors.  Evaluation factors are set out in Section M, Evaluation Factors for Award, of this solicitation.  However, failure to provide the requested information may make an Offeror ineligible for award or adversely affect the Government's evaluation of an Offeror's proposal."  Id. at 205.

Offerors were to include a separate technical proposal and price proposal.  See id. at 205-06.  In their technical proposals, offerors were to address each of four factors:  (1) technical and capabilities approach; (2) management approach; (3) teaming approach; and (4) past performance.  See id. at 211-14.  Relevant to this protest, within the technical and capabilities approach, Section L instructed offerors to "demonstrate the extent of skills, knowledge and experience resident within the company personnel (key and non-key personnel) who have performed work within a similar environment and that is relevant to the IDIQ Statement of Work."  Id. at 212.  Likewise, as to offerors' corporate management, Section L directed offerors to "demonstrate the extent of skills, knowledge,

3

and experience resident across the corporate management who has performed oversight and integration of contracted services within a similar environment and that is relevant to the Statement of Work." Id.

Pursuant to Section M, titled Evaluation Factors for Award, the DOE planned to evaluate offerors' proposals to determine "the best value to the Government" by first having a source evaluation board (SEB) review and evaluate the technical proposals. Id. at 218. Following this initial evaluation, a designated source selection authority was to select an offeror for contract award. Id. at 219. "[T]he evaluation factors for the Technical Proposal, when combined, [were] significantly more important than the evaluated price." Id. at 218. Within the technical proposal, the technical and capabilities approach was to be "significantly more important than all other technical proposal factors . . . combined." Id. Section M informed offerors that a proposal would be deemed unacceptable "if it [did] not represent a reasonable initial effort to address itself to the essential requirement of the solicitation, or if it clearly demonstrate[d] that the offeror [did] not understand the requirements of the solicitation or if it [did] not substantially and materially comply with the proposal preparation instructions" of the solicitation. Id. at 219.

The solicitation provided that the SEB was to evaluate technical proposal factors one through three using adjectival ratings of outstanding, good, acceptable, marginal, and unacceptable. See id.; id. at 222 (defining each of the adjectival ratings). Factor four, past performance, was evaluated on a scale of significant confidence, satisfactory confidence, neutral, and little confidence. See id. at 223. Evaluators reviewing the technical and capabilities approach were looking for:

> [T]he extent to which the implementation of the approach demonstrates a thorough understanding of the objective, scope, and intent of the requirement; the skills, knowledge and experience, including the ability to integrate the contracted services, that contractor personnel and corporate management possess; and the extent to which the approach ensures quality services and quality work products.

Id. at 220. In arriving at their "overall adjectival rating for a factor," the SEB assigned strengths and weaknesses to the proposal using the following descriptions:

| Significant Strength | Is an aspect of an Offeror's proposal that has **merit and significantly exceeds** specified performance or capability requirements in way that will be advantageous during contract performance and that will be **very low risk** to the Government. |
|---|---|
| Strength | Is an aspect of an Offeror's proposal that has **merit and exceeds** specified performance or capability requirements in way that will be advantageous during contract performance and that will be **low risk** the Government. |
| Weakness | Means a **flaw** in the proposal that **increases** the risk of unsuccessful contract performance. |
| Significant Weakness | Means, in the proposal, there is a **flaw** that **appreciably increases the risk** of unsuccessful contract performance. |
| Deficiency | Is a **material failure** of a proposal to meet a Government requirement or **a combination of significant weaknesses** in a proposal that increases the risk of unsuccessful contract performance to an unacceptable level. |

\*\*It is possible for the Government to find the proposal "acceptable" without attributing any of the definitions above (e.g. Significant Strength, Strength, Weakness or Significant Weakness) to the findings. Findings may simply explain how the Government perceived Contractor met the requirement. Likewise, an observation may also be made about the proposal that merely express a finding without affecting a rating\*\*

Id. at 221-22. The solicitation further defined the adjectival ratings, which were to be "used by the Government as a guide in assigning the overall rating" for the technical proposal factors, as follows:

| Rating | Description |
|---|---|
| **Outstanding** | Proposal meets and exceeds requirements and indicates an exceptional approach and understanding of the requirements. Significant Strength(s) and/or Strength(s) Strength(s)    far outweigh any weakness(es). Risk of unsuccessful performance is very low. |
| **Good** | Proposal meets and exceeds requirements and indicates a thorough approach and understanding of the requirements. Proposal contains Significant Strength(s) and/or Strengths which outweigh any Significant Weakness(es) and/or Weakness(es). Risk of unsuccessful performance is low. |
| **Acceptable** | Proposal meets requirements and indicates an adequate approach and understanding of the requirements. Significant Strength(s) and/or Strengths and Significant Weakness(es) and/or Weakness(es) are essentially offsetting. Risk of unsuccessful performance is moderate. |
| **Marginal** | Proposal does not clearly meet requirements or has not demonstrated an adequate approach and understanding of the requirements. Significant Weakness(es) and/or Weakness(es) essentially outweigh any Strength(s) or Significant Strengths. Risk of unsuccessful performance is high. |
| **Unacceptable** | Proposal does **not** meet requirements and contains one or more **deficiencies**. Proposal is <u>unawardable.</u><br><br>Proposals that are rated unacceptable in any of the factors will not be further considered for award. |

\*\**Risk* is defined as a **potential** for unsuccessful contract performance as determined by the Government. The consideration of risk assesses the degree to which an offeror's proposed approach to achieving the technical factor may involve risk of disruption of schedule, increased cost or degradation of performance, the need for increased Government oversight, and the likelihood of unsuccessful contract performance or other perceived impact on successful performance of the contract requirement.\*\*

Id. at 222.

The final evaluation factor, price, was not assigned an adjectival rating, but the "proposed total price for each year [would] be evaluated to determine whether the total IDIQ price for work on government facility is fair and reasonable." Id. at 221. The solicitation clarified that the DOE would "only evaluate the labor categories proposed based on the labor categories provided in the solicitation." Id. It further noted that, while the DOE was "more concerned with obtaining a superior technical proposal than making award at the lowest evaluated price," it would not "make an award at a price premium it consider[ed] disproportionate to the benefits associated with the evaluated superiority of one Offeror's technical and management proposal over another." Id. at 218. The solicitation anticipated that the "closer or more similar in merit that Offerors' technical proposals [were] evaluated to be, the more likely the evaluated price may be the determining factor in selection for award." Id.

B.  Proposals and Award

The DOE received five proposals in response to the solicitation, all of which it evaluated and found to be complete and accurate proposals. See ECF No. 27-12 at 766-67 (source selection decision memorandum). The members of the SEB each

6

independently reviewed and rated the offerors' technical proposals using the Section M evaluation factors and ratings, then, working as a group, "developed a consensus" of the strengths and weaknesses of the proposals and assigned a rating for each of the review factors. Id. The SEB prepared a detailed report of their evaluation. See id. at 546-722 (SEB Report). The SEB rated the offerors relevant to this protest as follows:

| Offeror | Technical & Capabilities Approach | Management Approach | Teaming Approach | Past Performance |
|---|---|---|---|---|
| LATA-Atkins Technical Services, LLC (LATS) | Outstanding | Outstanding | Outstanding | Significant Confidence |
| Navarro Research & Engineering, Inc. | Outstanding | Outstanding | Outstanding | Significant Confidence |
| RSI EnTech, LLC | Outstanding | Outstanding | Outstanding | Significant Confidence |

Id. at 549. Once the ratings were finalized, the SEB provided their report to the contracting officer and to the source selection authority (SSA) for review. See id. at 764. The contracting officer completed a price evaluation separate from the technical evaluation and concluded that all offerors offered a fair and reasonable price proposal. See id.; see also id. at 723-62 (price analysis).

The SSA then reviewed the SEB report and the contracting officer's price analysis and determined that intervenor-defendant was "the firm that provides the best value to the Government when considering the non-price technical and price factors." Id. at 764. The SSA documented the rationale for the selection in the source selection decision memorandum. Id. at 763-81. Specifically, the SSA determined that intervenor-defendant's proposal had multiple discriminating factors that made intervenor-defendant stand out from the other offerors, "due to the merits of [intervenor-defendant's] strong approaches under Factors 1 and 2." Id. at 780; see also id. at 768, 771. The SSA further determined that LATS' proposal would be ranked second overall, with plaintiff's proposal ranked third. Id. at 780.

The DOE selected intervenor-defendant as the awardee and notified the unsuccessful offerors in March 2020. See id. at 791 (notice of intent to award); 878-79 (letter from the DOE to plaintiff regarding the award decision). Plaintiff filed a protest at the Government Accountability Office (GAO) on March 23, 2020. See ECF No. 27-13 at 1-462 (protest).

C. Plaintiff's Bid Protest

After its protest at the GAO was denied, plaintiff filed its complaint in this court on June 25, 2020. See ECF No. 27-15 at 625-39 (GAO decision); ECF No. 1 (complaint). Plaintiff alleged: (1) that the DOE's evaluation of offerors' proposed personnel and corporate management was inconsistent with the evaluation criteria, see ECF No. 1 at 26; (2) that the DOE failed to properly analyze the risks presented by intervenor-defendant's "unrealistically low labor rates," id. at 32; (3) that intervenor-defendant's proposal contained a material misrepresentation, see id. at 42; (4) that the DOE failed to properly evaluate the impact of intervenor-defendant's teaming partner's corporate transaction, see id. at 45; (5) that the DOE inflated other offerors' technical ratings and minimized plaintiff's, see id. at 52; and (6) that the DOE was unreasonable in its evaluation of the second-place offeror's proposal, see id. at 57.

The parties then filed their cross-motions for judgment on the administrative record, which are now fully briefed. Plaintiff requested oral argument in this matter in its response and reply brief. See ECF No. 39 at 6. The court has broad discretion to manage its docket, and in that discretion determines that oral argument is not necessary in this case. See Amado v. Microsoft Corp., 517 F.3d 1353, 1358 (Fed. Cir. 2008). Thus, this case is ripe for decision.

II. Legal Standards

The Tucker Act grants this court jurisdiction:

> to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement . . . without regard to whether suit is instituted before or after the contract is awarded.

28 U.S.C. § 1491(b)(1).

The court's analysis of a "bid protest proceeds in two steps." Bannum, Inc. v. United States, 404 F.3d 1346, 1351 (Fed. Cir. 2005). First, the court determines, pursuant to the Administrative Procedure Act standard of review, 5 U.S.C. § 706, whether the "agency's action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with [the] law." Glenn Def. Marine (ASIA), PTE Ltd. v. United States, 720 F.3d 901, 907 (Fed. Cir. 2013) (citing 28 U.S.C. § 1491(b)(4) (adopting the standard of 5 U.S.C. § 706)). If the court finds that the agency acted in error, the court then must determine whether the error was prejudicial. See Bannum, 404 F.3d at 1351.

To establish prejudice, "a protester must show 'that there was a substantial chance it would have received the contract award but for that error.'" Alfa Laval Separation, Inc. v. United States, 175 F.3d 1365, 1367 (Fed. Cir. 1999) (quoting Statistica, Inc. v. Christopher, 102 F.3d 1577, 1582 (Fed. Cir. 1996)). "In other words, the protestor's chance of securing the award must not have been insubstantial." Info. Tech. & Applications Corp. v. United States, 316 F.3d 1312, 1319 (Fed. Cir. 2003). The substantial chance requirement does not mean that plaintiff must prove it was next in line for the award but for the government's errors. See Sci. & Mgmt. Res., Inc. v. United States, 117 Fed. Cl. 54, 62 (2014); see also Data Gen. Corp. v. Johnson, 78 F.3d 1556, 1562 (Fed. Cir. 1996) ("To establish prejudice, a protester is not required to show that but for the alleged error, the protester would have been awarded the contract."). Demonstrating prejudice does require, however, that the plaintiff show more than a bare possibility of receiving the award. See Bannum, 404 F.3d at 1358 (affirming the trial court's determination that the plaintiff had not demonstrated a substantial chance of award when its "argument rest[ed] on mere numerical possibility, not evidence").

Given the considerable discretion allowed contracting officers, the standard of review is "highly deferential." Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1058 (Fed. Cir. 2000). As the Supreme Court of the United States has explained, the scope of review under the "arbitrary and capricious" standard is narrow. See Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 285 (1974). "A reviewing court must 'consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment," and "[t]he court is not empowered to substitute its judgment for that of the agency.'" Id. (quoting Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 416 (1971)); see also Weeks Marine, Inc. v. United States, 575 F.3d 1352, 1368-69 (Fed. Cir. 2009) (stating that under highly deferential rational basis review, the court will "sustain an agency action 'evincing rational reasoning and consideration of relevant factors'") (citing Advanced Data Concepts, 216 F.3d at 1058).

III.    Analysis

In its motion for judgment on the AR, plaintiff argues that the DOE did not evaluate the offerors' proposals in accordance with the terms of the solicitation in several respects. See ECF No. 33 at 9. Plaintiff contends that the DOE's evaluation errors "compromise DOE's entire evaluation because none of the offerors' ratings were assigned pursuant to the evaluation criteria in the [s]olicitation." ECF No. 39 at 7. The court will address each of plaintiff's arguments in turn.

A.      The DOE's Evaluation under Sections L and M of the Solicitation

In its motion for judgment on the AR plaintiff first argues that the DOE failed to evaluate offerors' proposals in accordance with the stated criteria. See ECF No. 33 at 20-

9

26. Specifically, plaintiff contends that the DOE should have taken into account the proposal preparation instructions contained in Section L of the solicitation and evaluated the "extent" of an offeror's ability to meet the Section L requirements. See id. 20-21. Defendant responds that plaintiff is misreading the solicitation and, in doing so, adding unstated evaluation criteria. See ECF No. 38 at 23-24. Defendant contends that the solicitation's plain language does not require an evaluation of "the extent" of the offerors' experience, and, if plaintiff believed it did include such a requirement, plaintiff should have sought clarification before submitting its offer. See id. at 25-26, 28. Intervenor-defendant agrees with defendant. See ECF No. 37 at 15-16.

    Section L of the solicitation required offerors to "demonstrate the extent of skills, knowledge and experience resident within the company personnel (key and non-key personnel) who have performed work within a similar environment and that is relevant to the IDIQ Statement of Work." ECF No. 27-7 at 212. Likewise, as to offerors' corporate management, the solicitation directed offerors to "demonstrate the extent of skills, knowledge and experience resident across the corporate management who has performed oversight and integration of contracted services within a similar environment and that is relevant to the Statement of Work." Id. Plaintiff reads these instructions, in conjunction with Section M's requirement that offerors "substantially and materially comply" with the proposal instructions, to require the DOE to "evaluate the 'extent' of an offeror's ability to meet the requirements of Section L, not just whether an offeror could meet the minimum requirements." ECF No. 33 at 21 (citing ECF No. 27-7 at 219). Thus, plaintiff contends that the DOE should have considered "the extent to which the knowledge, skills, and experience of either an offeror's personnel or its corporate management were within a 'similar work environment'" or relevant to the solicitation statement of work as part of its Section M evaluation. Id. Such an evaluation, according to plaintiff, would have resulted in the DOE awarding plaintiff additional strengths based on plaintiff's direct experience with the program. Id. at 25-26.

    The court disagrees. Interpretation of a solicitation begins with "the plain language of the document." Banknote Corp. of Am. v. United States, 365 F.3d 1345, 1353 (Fed. Cir. 2004). "If the provisions of the solicitation are clear and unambiguous, they must be given their plain and ordinary meaning." Id. The plain language of the Section L provides proposal preparation instructions only. The solicitation states that "[t]hese instructions are not evaluation factors. Evaluation factors are set out in Section M, Evaluation Factors for Award, of this solicitation." ECF No. 27-7 at 205. The plain language unambiguously provides that Section L includes instructions, not factors for evaluation.

    The court must, however, consider the solicitation "as a whole, interpreting it in a manner that harmonizes and gives reasonable meaning to all of its provisions." Banknote Corp., 365 F.3d at 1353. Section L makes clear that the "failure to provide the requested information may make an Offeror ineligible for award or adversely affect the

10

Government's evaluation of an Offeror's proposal." ECF No. 27-7 at 205.  Section M provides that a proposal would be "deemed unacceptable if it [did] not represent a reasonable initial effort to address itself to the essential requirements of the solicitation, or if it clearly demonstrate[d] that the offeror [did] not understand the requirements of the solicitation or if it [did] not substantially and materially comply with the proposal preparation instructions" of the solicitation.  Id. at 219.  These sections, read together, with the provision describing Section L as containing the proposal instructions and Section M as setting forth the evaluation factors, make plain that the evaluators were looking for a complete proposal with all requested information included.  But, these sections do not convert the proposal instructions of Section L into evaluation factors as plaintiff contends.  Such a conversion would be counter to the plain language of the solicitation.

Plaintiff cites to several cases that it claims support its argument that Section L contains binding evaluation factors.  See ECF No. 33 at 23-24.  Unlike the circumstances before the court, however, each of the cited cases present a situation in which an offeror left information out of its proposal in violation of the proposal instructions and later argued that the instructions were not binding.  See, e.g., Orion v. United States, 102 Fed. Cl. 218, 228 (2011) (reviewing plaintiff's contention that the specific pricing information called for in the solicitation was not a binding requirement and finding it contrary to the plain language of the solicitation).  These cases are inapplicable here—where plaintiff argues that the Section L requirements are not only binding, but add additional requirements to the evaluation factors.[3]

Further, the court reads at least one of the cases cited by plaintiff as supporting defendant's position.  Plaintiff cites Antarctic Support Associates v. United States, 46 Fed. Cl. 145 (2000), for the proposition that a capability discussed in Section L, but not Section M, can be considered as an evaluation factor.  See ECF No. 39 at 7.  In Antarctic,

---

[3]   In its notice of supplemental authority, plaintiff reviews a GAO decision from September 23, 2020, Evergreen JV, B-418475.4, 2020 WL 5798042 (Comp. Gen. Sept. 23, 2020).  See ECF No. 44-1 at 2-4.  Plaintiff argues that this decision is relevant here because it involved the interpretation of a similar solicitation term regarding an evaluation of the extent of offerors' ability to demonstrate capabilities.  Id.  In Evergreen JV, the GAO held that "[w]here a solicitation indicates that the agency will evaluate the 'extent' a proposal meets a particular requirement, offerors can reasonably expect that a proposal exceeding the agency's minimum requirements will garner a more favorable evaluation than one that merely meets the requirements."  Evergreen JV, 2020 WL 5798042 at *8.  The solicitation at issue in Evergreen JV, unlike the solicitation here, included specific evaluation factors regarding the extent of an offeror's relevant capabilities.  See id. at *2-3.  The court is not persuaded by plaintiff's argument, and the outcome of this opinion would be unaffected by plaintiff's offered supplemental authority.  Therefore, plaintiff's motion for leave to file notice of supplemental authority, ECF No. 44, is denied.

11

the plaintiff argued that the proposal instructions in the solicitation at issue referenced a requirement that was not listed in the evaluation factors. See Antarctic, 46 Fed. Cl. at 155. The court noted, however, that the requirement was included within an evaluation factor and that the evaluation report clearly and appropriately showed consideration of the requirement as part of the agency's consideration of the whole factor. Id.

Similarly, in this case, Section L instructed offerors to "demonstrate the extent of skills, knowledge and experience" their personnel and management had in similar environments, and the Section M evaluation criteria incorporated this directive, noting that the evaluation would consider "the extent to which the implementation of the approach demonstrates . . . the skills, knowledge and experience, including the ability to integrate the contracted services, that contractor personnel and corporate management possess." ECF No. 27-7 at 212, 220. Like in Antarctic, the requirement plaintiff identifies in Section L and argues must convey to Section M, is in fact included in Section M, even if not how plaintiff would like.[4]

The record in this case reveals that the DOE treated the Section L instructions as binding and evaluated the proposals received for completeness and accuracy, finding that each proposal satisfied the instructions. See ECF No. 27-12 at 767 (Source Selection Decision Memorandum stating that "[e]ach respective proposal included a complete Volume as instructed, and therefore [was] determined to be responsive"). The DOE also evaluated each offeror's technical capabilities pursuant to the evaluation factors outlined in Section M. See ECF No. 27-12 at 549-722; 764. That the DOE evaluated the skills, knowledge, and experience of each offerors' personnel and management in accordance with the Section M factors is clear in the record. See, e.g., id. at 617-18 (assigning plaintiff strengths for "Essential/Critical Personnel with Unique Depth of Knowledge of LM Site and Services" and for its personnel in general). Thus, the DOE appropriately evaluated the proposals according to the terms of the solicitation, and plaintiff's protest on this count must be denied.

      B.      The DOE's Evaluation of Performance Cost and Risk of Labor Rates

Plaintiff argues that intervenor-defendant's representation in its proposal that it would "'[p]rovide a compensation and benefits structure aligned with current salary and benefits,'" was a misrepresentation given that the prices it proposed "failed to cover just the base salary and fringe benefits of incumbent personnel" in a majority of the labor categories. ECF No. 33 at 38-39 (quoting ECF No. 27-9 at 86 (intervenor-defendant's proposal)). Plaintiff thus contends that intervenor-defendant should not have been

---

[4]     Notwithstanding plaintiff's arguments regarding the exact language of the Section L instructions, the plain language of Section L does not support plaintiff's preferred reading. The court is not persuaded that the Section L instructions are ambiguous, and declines to read evaluation factors into the solicitation in the manner plaintiff desires.

eligible for award since its "approach to recruiting and retaining incumbent personnel is based on the knowingly false foundation that [intervenor-defendant] will offer salaries and benefits consistent with the incumbent salaries and benefits." Id. at 41.

Plaintiff further argues that because intervenor-defendant's proposal includes labor prices that are "unrealistically low," it represents a cost and performance risk that the DOE should have—but did not—take into account. ECF No. 33 at 27. Plaintiff contends that the Section M factor requiring the DOE to evaluate the "cost and performance risks of each Offeror's proposal" made it mandatory for the DOE to make "an assessment of whether the offeror's costs to the Agency are too low to support successful contract performance." Id. (quoting ECF No. 27-7 at 219 (solicitation Section M.3(b)(2))). In further support of its position, plaintiff cites to Federal Acquisition Regulation (FAR) 52.237-10(d), which is included in the solicitation, and provides that "[p]roposals that include unrealistically low labor rates, or that do not otherwise demonstrate cost realism, will be considered in a risk assessment and will be evaluated for award in accordance with that assessment." Id. at 28 (quoting and adding emphasis to ECF No. 27-2 at 197). Plaintiff contends that intervenor-defendant's labor rates should have been subjected to a risk analysis because it proposed to retain "'the majority'" of plaintiff's incumbent staff and the labor rates proposed "for 75% of the work at issue, do not even cover the paychecks of the incumbent workforce." ECF No. 33 at 27 (emphasis in original).

Both defendant and intervenor-defendant respond that it is plaintiff who mischaracterizes intervenor-defendant's proposal. See ECF No. 38 at 42; ECF No. 37 at 32-35. Defendant notes that intervenor-defendant's approach to recruiting incumbent personnel did not rely on maintaining the entire or the majority of the workforce, but rather "to prioritize and to target 'incumbents with critical institutional knowledge, superior management and leadership performance, and high skill levels'" and to maintain a majority of that staff. ECF No. 38 at 42 (quoting ECF No. 27-9 at 83). Both defendant and intervenor-defendant further point out that, because the solicitation requested fully-burdened labor rates, "the risk of the costs of performance lies with the contractor, and offerors may offer below-cost labor rates." Id. at 44; see also ECF No. 37 at 34.

Defendant and intervenor-defendant add that plaintiff's argument that the DOE should have evaluated intervenor-defendant's price—to determine whether they were too low—effectively requests a price realism analysis, which was not required by the solicitation. See ECF No. 38 at 30; ECF No. 37 at 21. The two parties also contend that, without an explicit requirement in the solicitation that the agency will conduct a price realism analysis, such an analysis is inappropriate and "an agency cannot reject an offer merely because it deems the price too low." ECF No. 38 at 31; ECF No. 37 at 22. Defendant points out that plaintiff's citation to FAR 52.237-10 is inapposite because that provision relates to uncompensated overtime—which intervenor-defendant's proposal did not include. Id. at 33. Rather, defendant argues, the solicitation only required that the proposed total price "'be evaluated to determine whether the total IDIQ price for work on

[the] government facility is fair and reasonable.'" Id. (quoting ECF No. 27-7 at 221). And, according to defendant, this is what the DOE did when the contracting officer performed the price analysis. Id. at 36.

As an initial matter, the court agrees with defendant and intervenor-defendant that intervenor-defendant's proposal did not include a misrepresentation. Intervenor-defendant clearly stated that it intended to hire the majority of a group of key incumbent personnel that it targeted for specific reasons. See ECF No. 27-9 at 83. Whether intervenor-defendant proposed prices that would support the salaries of the incumbent personnel does not change intervenor-defendant's intent. Rather, it informs the risk that the intervenor-defendant was willing to accept.

The court also agrees with defendant and intervenor-defendant that the solicitation in this case does not require a price realism analysis. It is well-settled that an agency may not evaluate a proposal using unstated evaluation criteria. See, e.g., Acra, Inc. v. United States, 44 Fed. Cl. 288, 293 (1999) ("[T]he government is not permitted to rely upon undisclosed evaluation criteria when evaluating proposals."). In the case of a fixed price contract, price realism is not ordinarily considered because, as defendant pointed out, a fixed-price contract assigns the risk of loss to the contractor. See NVE, Inc. v. United States, 121 Fed. Cl. 169, 180 (2015). Therefore, "it is improper for an agency to conduct a price realism analysis in a fixed-price procurement when the solicitation does not expressly or implicitly require a price realism analysis because such an analysis would employ unstated evaluation criteria." UnitedHealth Military & Veterans Servs., LLC v. United States, 132 Fed. Cl. 529, 561 (2017).

The solicitation in this case does not explicitly require a price realism analysis. The court finds that the only explicit reference to price realism to which plaintiff pointed in the solicitation is FAR 52.237-10(d). See ECF No. 33 at 28. When read in context, it is clear that this FAR provision relates to uncompensated overtime, and does not provide an independent basis for price realism review.

To determine whether the solicitation implicitly included a price realism analysis requirement, the court looks to the plain language of the solicitation. See UnitedHealth, 132 Fed. Cl. at 562. Plaintiff identified no term in the solicitation that required proposals to be rejected because their prices were too low; nor did plaintiff identify any term that required prices to be evaluated for anything other than fairness and reasonableness. See generally, ECF No. 33 at 27-37. Indeed, the solicitation stated clearly, more than once, that price would be evaluated for fairness, reasonableness, and completeness. See ECF No. 27-7 at 215, 218, 221. Without more, plaintiff's argument that the solicitation's statement that "cost and performance risks," along with the relative strengths and weaknesses of the proposals, would be assessed "against the evaluation factors in this Section M <u>to determine the Offeror's ability to perform the contract</u>" is sufficient to implicitly require a price realism analysis, must fail. ECF No. 33 at 27 (quoting and adding emphasis to ECF No. 27-7 at 218-19). The court finds that the plain language of

the solicitation neither explicitly nor implicitly provided for a price realism analysis. Therefore, the DOE appropriately did not conduct a price realism analysis in its evaluation of the proposals.

The DOE was required, however, to evaluate the "cost and performance risks" associated with the evaluation factors in Section M. See ECF No. 27-7 at 218-19. Plaintiff did not present, and the court did not find, any evidence that the DOE failed to perform this assessment. The fact that problems related to intervenor-defendant's labor rates and ability to recruit incumbent personnel may arise, simply does not mean that the agency failed to consider these potential problems rendering the award arbitrary and capricious or unreasonable. To the contrary, the DOE appears to have fully considered intervenor-defendant's recruitment plan and set forth its considerations. See ECF No. 27-12 at 643. The court will not substitute its judgment for that of the agency under such circumstances. See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983) (noting that review under the arbitrary and capricious standard is "narrow" and "a court is not to substitute its judgment for that of the agency"). Plaintiff's claim on this count must be denied.

      C.      The DOE's Evaluation of Intervenor-Defendant's Teaming Partner's Corporate Transaction

Plaintiff argues that the DOE failed to evaluate the impact of the sale of intervenor-defendant's teaming partner—AECOM N&E Technical Services, LLC (AECOM). See ECF No. 33 at 42-48. Plaintiff contends that, although intervenor-defendant included information in its proposal alerting the DOE to an impending corporate transaction involving AECOM, that transaction did not occur and another, slightly different transaction did. See id. at 43-44. According to plaintiff, the transaction that ultimately occurred affected intervenor-defendant's technical capabilities and past performance information, and the DOE should have evaluated the impact of that transaction. See id. at 44-46; ECF No. 39 at 25.

Defendant responds that the DOE "reasonably accepted [intervenor-defendant's] representations regarding AECOM and the transaction in its proposal." ECF No. 38 at 51. Defendant argues that intervenor-defendant notified the DOE of the impending transaction and represented that the contract would be "minimally impacted." Id. at 53. The DOE, defendant contends, was entitled to—and did—rely on that representation and "reasonably evaluated [intervenor-defendant's] proposal in light of its assurances." Id. at 56. Further, defendant argues, when the DOE learned that the transaction had been completed, the DOE followed up with intervenor-defendant and issued an "updated determination confirming [its] responsibility finding." Id. at 54.

The court agrees with defendant that the DOE was reasonably entitled to rely on intervenor-defendant's representations in its proposal related to its teaming partner and the impending transaction. The scope of review under the "arbitrary and capricious"

15

standard is narrow.  See Motor Vehicle Mfrs. Ass'n, 463 U.S. at 43.  "A reviewing court must 'consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment," and "[t]he court is not empowered to substitute its judgment for that of the agency.'"  Bowman Transp., 419 U.S. at 285 (quoting Citizens to Preserve Overton Park, 401 U.S. at 416).

     The DOE found intervenor-defendant's proposal to be thorough, found its teaming approach to be "complete, detailed, and comprehensive," and found its past performance to be "recent and relevant" providing "significant confidence that the offeror would successfully perform the requirement."  ECF No. 27-12 at 767, 773-74.  The only evidence plaintiff has provided that it was unreasonable for the DOE to rely on intervenor-defendant's representations as to the corporate transaction are qualifying statements in the United States Securities and Exchange Commission documents that AECOM released related to the transaction.  See ECF No. 33 at 44.  The court does not find these statements to be persuasive evidence that the DOE should not have relied on intervenor-defendant's assurances that the transaction would have a minimal impact on the contract.  Without more, the court finds that the DOE performed a reasonable evaluation of intervenor-defendant's proposal that comported with the evaluation factors outlined in the solicitation.  The court will not substitute its judgment for that of the agency as it relates to the impact of the AECOM corporate transaction on intervenor-defendant's proposal.

     Further, the contracting officer, upon learning of the completion of the AECOM transaction, which occurred "just prior to award," decided that "it was in the best interest of DOE to perform an updated responsibility determination."  ECF No. 27-15 at 503.  The contracting officer evaluated the transaction and its results, reviewed a declaration provided by intervenor-defendant, and determined that "the latest information did not affect [intervenor-defendant's] responsibility status" and that intervenor-defendant was "still considered responsible."  Id.  Plaintiff describes the DOE's consideration of the declaration as a post hoc rationalization because it was completed after contract award and after plaintiff's protest at the GAO.  See ECF No. 33 at 47-48.  Defendant responds that it is appropriate for an agency to "reassess an issue like this one" if additional information becomes available.  ECF No. 38 at 58.

     The court agrees with defendant.  Because the AECOM transaction occurred so close to the time of award, it was appropriate and reasonable for the contracting officer—when she became aware of the issue—to investigate and make a determination.  Cf. Turner Constr. Co., Inc. v. United States, 645 F.3d 1377, 1386 (Fed. Cir. 2011) (noting that in the context of organizational conflicts of interest (OCI), information may not come to light until after award, making a post-award OCI review appropriate).  Thus, the DOE thoroughly considered the AECOM transaction and its impact on the award.  Once again, the court will not second guess the agency's determination or substitute its judgment for

that of the agency.  See Motor Vehicle Mfrs. Ass'n, 463 U.S. at 43.  Plaintiff's claim on this point must fail.

        D.      The DOE's Evaluation of the Technical Ratings of Offerors

Plaintiff next argues that the DOE inappropriately evaluated the offerors' proposals by "'grade inflation'" for intervenor-defendant and the second-place proposal and by "minimizing the technical superiority of [plaintiff's] proposal" in a quest for the lowest price offer.  ECF No. 33 at 49.  Plaintiff contends that the DOE erred by not "meaningfully distinguish[ing]" between strengths and significant strengths, thereby "impermissibly level[ing] the offerors' technical proposals and chang[ing] the very nature of the procurement."  Id.  Plaintiff adds that the DOE also "flatten[ed] the remaining discriminators that worked in [plaintiff's] favor" by minimizing the weaknesses in the other proposals.  Id.

Defendant responds that plaintiff's argument is "'mere disagreement'" with the evaluation, and that any suggestion that the DOE was angling for the lowest price offer is incorrect because the SEB did not consider the offerors' price proposals.  ECF No. 38 at 59.  Defendant points out that "[i]t is well-recognized" that evaluators' "judgment in assigning strengths or significant strengths . . . is inherently subjective."  Id. at 60.  Defendant argues that despite the subjective nature of this judgment, the record in this case demonstrates that both the SEB and the source selection authority "carefully documented the basis for every strength" awarded and "discussed those [intervenor-defendant] strengths [ ] found to be discriminators."  Id. at 60-61.

Plaintiff replies that "it is implausible that the DOE rationally determined that 152 aspects of offerors' proposals exceeded the [s]olicitation's requirements, yet only one aspect significantly exceeded the [s]olicitation's requirements."  ECF No. 39 at 30.  This, plaintiff argues, led to four of the five offerors receiving "perfect technical and past performance ratings," and made DOE's award decision almost certain to be "only [ ] based on price."  Id. at 31.

Plaintiff's quarrel with the DOE's ratings of the proposals amounts to a request that the court substitute its judgment for that of the agency.  Plaintiff's only evidence that the DOE artificially inflated and deflated the offerors' ratings is its assumption that the ratings would have been less similar if the DOE had not done so.  See ECF No. 33 at 49.  The record reflects that the DOE performed an extensive evaluation of each offeror's proposal.  Without more, the court will not substitute its judgment for that of the agency.  See Motor Vehicle Mfrs. Ass'n, 463 U.S. at 43.  Plaintiff's claim on this count must fail.

        E.      The DOE's Evaluation of the Second-Place (LATS) Proposal

Finally, plaintiff argues that "there are multiple flaws in DOE's evaluation" of the second-place offeror's proposal and in the source selection authority's conclusion

17

regarding the second-place ranking.  ECF No. 33 at 52.  Plaintiff repeats its earlier claims as to the DOE's evaluation of the proposals and contends that the second-place offeror was "neither eligible for award, nor technically equivalent to" plaintiff.  Id. at 53.  Specifically, plaintiff claims that one of the second-place offeror's key personnel is no longer employed by the company thereby rendering the company ineligible for award.  Id.  Plaintiff also argues that the DOE should not have found similar merit between plaintiff and the second-place offeror because, although they had similar number of strengths, the second-place offeror also had a weakness.  Id. at 53-54.

Defendant responds that plaintiff's argument is "reprising the other counts of its protest" and "fail[s] for the same reasons" as defendant has previously argued.  ECF No. 38 at 66.  Defendant also asserts that plaintiff's claim related to the second-place offeror's personnel is based on extra-record evidence not before the agency at the time of its decision, while the employee's signed commitment letter was.  Id. at 67.  And, defendant argues, plaintiff's disagreement with the technical ratings is "mere disagreement with the agency's discretionary judgment" and "is not a valid basis for protest."  Id.

Plaintiff replies that the second-place offeror was obligated to inform the DOE of changes in its proposed staffing and did not.  See ECF No. 39 at 32.  It requests that the court supplement the AR with evidence of the employee's change in employment to permit the court to evaluate whether the offeror "would have been eligible for award in light of [the employee's] departure."  Id.

The court has already addressed the merits of the claims plaintiff repeats here as to the second-place offeror and has found each claim unavailing.  The court, therefore, will not reexamine the claims it has already carefully considered.

Plaintiff's claim regarding the departure of a key employee of the second-place offeror does not persuade the court.  The court agrees with defendant that the evidence presented by plaintiff falls outside of the AR, and finds that supplementation is not necessary for meaningful judicial review in this matter.  Axiom Res. Mgmt., 564 F.3d at 1379-80.  The DOE evaluated the proposals with the information that it had in front of it at the time of evaluation, including a letter of commitment from the key employee.  See ECF No. 27-11 at 257 (letter of commitment included in the proposal).  The court will not substitute its judgment for that of the agency with respect to the evaluation of the availability of the offeror's key personnel.  See Motor Vehicle Mfrs. Ass'n, 463 U.S. at 43.

The court also agrees with defendant that plaintiff's disagreement with the technical ratings is a disagreement with the agency's discretionary judgment.  See ECF No. 38 at 67.  As the court previously stated, the record reveals that the DOE performed an extensive evaluation of each offeror's proposal.  Plaintiff did not point to any evidence in the record that the agency inappropriately evaluated the second-place offeror's

proposal outside its claim that because the company had a weakness that plaintiff did not, the second-place offeror's proposal should not have been so highly rated.  See ECF No. 33 at 54.  Without more, the court will not substitute its judgment for that of the agency.  See Motor Vehicle Mfrs. Ass'n, 463 U.S. at 43.  Plaintiff's claim on this count must fail.

IV. Conclusion

Accordingly, having found none of plaintiff's claims meritorious,

(1) Plaintiff's motion for leave to file notice of supplemental authority, ECF No. 44, is **DENIED**;

(2) Plaintiff's motion for judgment on the AR, ECF No. 32, is **DENIED**;

(3) Intervenor-defendant's cross-motion for judgment on the AR, ECF No. 37, is **GRANTED**;

(4) Defendant's cross-motion for judgment on the AR, ECF No. 38, is **GRANTED**;

(5) The clerk's office is directed to **ENTER** final judgment in defendant's and intervenor-defendant's favor **DISMISSING** plaintiff's complaint with prejudice; and

(6) On or before **November 25, 2020**, the parties are directed to **CONFER** and **FILE** a **notice** informing the court as to whether any redactions are required before the court makes this opinion publicly available, and if so, attaching an agreed-upon proposed redacted version of the opinion.

IT IS SO ORDERED.

s/Patricia E. Campbell-Smith
PATRICIA E. CAMPBELL-SMITH
Judge